OPINION

MEYERS, J.,
delivered the opinion of the Court, in which
PRICE, WOMACK, JOHNSON, KEASLER, and HERVEY, JJ., joined.
Appellant, Richard Lee Rabb, was convicted of tampering with physical evidence under Section 37.09(a)(1) of the Texas Penal Code and sentenced to six years of confinement. The Seventh Court of Appeals reversed the trial court’s judgment of conviction and rendered a judgment of acquittal. Rabb v. State, 387 S.W.3d 67, 73 (TexApp.-Amarillo 2012). The State filed a petition for discretionary review asking that we consider (1) whether the court of appeals erred in failing to find overlap in the terms “conceals” and “destroys,” (2) whether the court of appeals erred in not permitting the fact finder to infer the evidence was destroyed, and (3) whether the court of appeals was required to reform the judgment to a conviction on a lesser-included offense rather than acquit. We granted the State’s petition in order to consider these issues. We now hold that while there is some overlap between the terms “conceals” and “destroys” for purposes of Section 37.09(a), no rational trier of fact could have found that Appellant destroyed the evidence in this case. However, because the court of appeals did not have the benefit of our recent opinion in Thornton v. State, 425 S.W.3d 289 (Tex. Crim.App.2014), we remand the case for the court of appeals to consider whether reformation of the judgment is required.
FACTS
Appellant was shopping in a Wal-mart store in Rockwall with his step-brother, James Reynolds, and their mother. Appellant and Reynolds were both in the electronics section of the store, but some distance from each other, when a Wal-mart asset-protection coordinator observed Reynolds select items from the shelves in a suspicious manner. The employee then watched as Reynolds walked to another section of the store, unwrapped the merchandise, and hid it in his clothing. While observing this, the asset protection coordinator attempted to contact additional employees for backup. He had difficulty get *615 ting a response, so he called the police and requested that an officer come to the store. Once Reynolds exited the check-out area without paying for the items in his clothing, he was detained by store employees. When questioned about who else was with him, Reynolds described his stepbrother, Appellant.
In the meantime, Appellant had continued shopping, unaware that Reynolds had been detained for shoplifting. After Appellant paid for his items and was exiting the store, a police officer who had responded to the call to the store approached him. The events that followed were captured by the store’s security camera and shown to the court while witnesses narrated. The officer explained to Appellant that Reynolds was in custody for stealing merchandise and asked Appellant if he had taken anything from the store without paying. When Appellant responded that he had not, the officer asked for consent to search him. Appellant consented by immediately turning around and placing his hands in the air. The officer was conducting a pat-down search and removing items from Appellant’s pockets when one of the employees standing nearby noticed the corner of a plastic baggie in Appellant’s hand. The employee notified the officer. When the officer went to retrieve the baggie, Appellant put the baggie in his mouth.
The officer demanded that Appellant spit out the baggie, but Appellant refused. The officer then attempted to restrain Appellant to keep him from swallowing the baggie. Appellant resisted, and a second officer who had been summoned to the store tasered Appellant multiple times, eventually rendering Appellant submissive and unconscious. At some point during the altercation, Appellant swallowed the baggie and its contents.
Although Appellant regained consciousness quickly, an ambulance was called to the scene. The medical report shows that Appellant told the medic that the baggie “contained pills that were not prescribed to him, but would not state exactly what they were. He originally said pain pills, but later said they were OTC meds and it was about four of them.” No one made any attempt to retrieve the items that Appellant swallowed.
The State charged Appellant with violating Section 87.09 of the Penal Code by “knowing that an investigation was in progress, ... intentionally or knowingly destroying] a plastic baggie with intent to impair its availability as evidence in the investigation.” The trial court convicted Appellant and sentenced him to six years of confinement.
COURT OF APPEALS
Appellant appealed, arguing that the evidence was insufficient to establish that he destroyed the baggie or that he knew an investigation was in progress. Rabb, 387 S.W.3d at 70. The court first considered the evidence on Appellant’s destruction of the baggie and addressed the definitions of “conceal” and “destroy.” It reasoned that, contrary to the State’s suggestion, the two terms should not be applied in a way that “maximizes their overlap” and produces a result where “every item concealed [would] also be considered destroyed.” Id. at 72. While the State contended that the Appellant destroyed the baggie because his actions caused its “complete ruination,” the court said that the State’s definition was equating the two words simply because the item had not been recovered. Id. The court of appeals concluded that, because the evidence showed only the baggie’s location and nothing about the condition of the baggie or pills, the acts of Appellant constituted concealment rather than destruction. Id. Based on this determination, the court of appeals reversed the trial *616 court, holding that no rational trier of fact could have found that Appellant destroyed the baggie within the meaning of the law.[1] Id. at 73.
STANDARD OF REVIEW
In evaluating the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the defendant guilty of all of the elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Swearingen v. State, 101 S.W.3d 89, 95 (Tex.Crim.App.2003). When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements. Cada v. State, 334 S.W.3d 766, 774 (Tex.Crim.App.2011) (citing Planter v. State, 9 S.W.3d 156, 159 (Tex.Crim.App.1999); Fuller v. State, 73 S.W.3d 250, 255-56 (Tex.Crim.App.2002) (Keller, P.J., concurring); Macias v. State, 136 S.W.3d 702, 705-06 (TexApp.-Texarkana 2004, no pet.)). The due-process guarantee requires proof beyond a reasonable doubt to support every element of the offense alleged and demands that we reverse and order a judgment of acquittal if a rational trier of fact would entertain a reasonable doubt as to the defendant’s guilt. Swearingen, 101 S.W.3d at 95.
DESTRUCTION OF EVIDENCE
Section 37.09(a)(1) of the Texas Penal Code defines the offense of tampering with physical evidence with three elements: (1) Knowing that an investigation or official proceeding is pending or in progress; (2) a person alters, destroys, or conceals any record, document, or thing; (3) with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. Williams v. State, 270 S.W.3d 140, 142 (Tex.Crim.App.2008). As noted, Appellant’s indictment alleged only that he destroyed the evidence and did not allege either of the statutory alternatives.
In the present case, the court of appeals looked to our opinion in Williams for the definition of “destroy” and for guidance in analyzing Appellant’s actions. In Williams, we held that a glass crack pipe that had been broken into pieces when stepped on was destroyed for the purposes of this statute. Id. at 146. We asserted that, because the Legislature chose to use the three different words in the statute, “ ‘destroys’ must have an effect distinct from ‘alters’ and ‘conceals.’” Id. We then determined that evidence is “destroyed” when “ruined or rendered useless,” rather than when its evidentiary value is lost or diminished. Id. at 145-46.
The court of appeals used this discussion from Williams in deciding that “destroy” and “conceal” should not so closely overlap as to be interchangeable in this case. The State, however, mischaracterizes the opinion as disallowing any overlap in the definitions of “destroy” and “conceal.” In reality, the court of appeals explicitly acknowledged that “there is the possibility of overlap in the application of the three means of tampering.” Rabb, 387 S.W.3d at 72. The court of appeals simply declined to extend the definition of “destroy” that we put forth in Williams to the situation in this case in which Appellant’s “action so clearly constitut[ed] a concealment.” Id.
*617 While the words chosen by the Legislature in defining this offense each have a distinct purpose, this does not preclude overlap among those meanings. See, e.g., Clinton v. State, 854 S.W.3d 795, 801 (Tex.Crim.App.2011) (concluding that “uses” and “presents” have some overlap in the debit-card-abuse statute); Taylor v. State, 117 S.W.3d 848, 851 (Tex.Crim.App.2003) (stating there is nothing “unusual” in overlap between the terms “manager” and “employee”); Patterson v. State, 769 S.W.2d 938, 941 (Tex.Crim.App.1989) (holding that there is overlap in the terms “usé” and “exhibit” in the deadly-weapon statute). Therefore, while “conceal,” “destroy,” and “alter” each have their own meaning, they are not mutually exclusive, and we do not find the court of appeals’ decision in conflict with this conclusion.
The State also argues that the court of appeals erred in deciding that no reasonable trier of fact could have found that Appellant’s actions constituted destruction of the baggie. The State points out that fact finders are permitted to draw reasonable inferences if supported by the evidence. Jackson, 443 U.S. at 319, 99 S.Ct. 2781; Hooper v. State, 214 S.W.3d 9, 15 (Tex.Crim.App.2007). It asserts that concluding that the baggie was destroyed in Appellant’s digestive tract was a reasonable inference for the trial court to make.
The State’s statement of the law is correct. This means that if a fact finder could reasonably infer from the evidence that the baggie and pills were destroyed by their passage into Appellant’s body, then the evidence would be sufficient to uphold Appellant’s conviction. Id. The fact finder is, however, prohibited from drawing conclusions based on speculation or mere theorizing about the possible meaning of the facts. Hooper, 214 S.W.3d at 16.
In this case, the State did not present any evidence on the condition of the baggie or its contents after Appellant swallowed them, nor any evidence that demonstrated that the items had been ruined or rendered useless. In fact, there was not even an attempt made by officers or doctors to retrieve the baggie or to determine if its recovery was possible. There was, therefore, no evidence at the trial from which a fact finder could reasonably infer that the evidence had been destroyed.
The State also asserts that triers of fact are free to use their common sense, common knowledge, observation, and experience to make inferences reasonably drawn from the evidence. It argues that people’s life experiences would allow an inference that the baggie was destroyed in Appellant’s stomach. However, while it is possible that the baggie was destroyed, it is just as possible that it was not. Swallowing items filled with drugs is a common technique used by smugglers to conceal and transport those drugs. This act clearly does not cause the destruction of the drugs, or it would be useless to the transporters. Therefore, without any evidence on the status of the baggie, a determination on whether it was intact or destroyed after passing through Appellant’s stomach would be based purely on speculation.
In order to prevail in any prosecution, “the State must prove the statutory elements that it [chose] to allege, not some other alternative statutory element that it did not allege.” Cada, 334 S.W.3d at 776 (discussing the requirements of due process and Jackson v. Virginia). In this ease, the State chose to allege only that Appellant destroyed the evidence and chose not to include either of the statutory alternatives. The State then presented no evidence that the baggie and its contents were destroyed and no evidence on which a fact finder could base a reasonable infer- *618 enee that they had been destroyed. Consequently, we hold that the court of appeals was correct in determining that no rational trier of fact could have found that Appellant destroyed the evidence.
LESSER-INCLUDED OFFENSE
The State’s final argument is that, upon finding the evidence insufficient to show Appellant “destroyed” the evidence, the court of appeals should have reformed his conviction to attempted tampering with evidence rather than entering a judgment of acquittal.
The State bases this argument on our decision in Bowen v. State, 374 S.W.3d 427 (Tex.Crim.App.2012), in which we overruled Collier v. State, 999 S.W.2d 779 (Tex.Crim.App.1999) and ordered the reformation of an acquittal judgment to reflect a conviction on a lesser-included offense.
Neither the State nor the court of appeals had the benefit of our decision in Thornton v. State, which was rendered on April 2, 2014. In Thornton we held that:
[Ajfter a court of appeals has found the evidence insufficient to support an appellant’s conviction for a greater-inclusive offense, in deciding whether to reform the judgment to reflect a conviction for a lesser-included offense, that court must answer two questions: 1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense? If the answer to either of these questions is no, the court of appeals is not authorized to reform the judgment. But if the answers to both are yes, the court is authorized — indeed required — to avoid the “unjust” result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense.
425 S.W.3d at 299-300.
Therefore, the proper disposition here is to remand the case to the court of appeals for its consideration of those questions.
CONCLUSION
Considering the evidence in the light most favorable to the court’s verdict, a rational trier of fact could not have found beyond a reasonable doubt that Appellant destroyed the baggie and its contents. However, the court of appeals must analyze whether our recent decision in Thornton mandates reformation of the conviction rather than acquittal. Therefore, the case is remanded to the court of appeals for consideration of this issue.
COCHRAN, J., filed a concurring opinion.
ALCALA, J., filed a dissenting opinion, in which KELLER, P.J., joined.

. Because it reversed on this issue, the court found it unnecessary to consider whether there was sufficient evidence of Appellant's knowledge that an investigation was in progress. Rabb, 387 S.W.3d at 73.