PD-0033-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/29/2015 10:54:18 AM
Accepted 1/29/2015 3:29:05 PM
ABEL ACOSTA
CLERK

NO. PD-0033-15

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

January 29, 2015

ABEL ACOSTA, CLERK

JOHNNY RUIZ,
APPELLANT

vs.

THE STATE OF TEXAS,
APPELLEE

*Seeking discretionary review of an opinion from the Court of Appeals
for the Fifth District of Texas at Dallas in Cause No. 05-13-00918-CR*

STATE'S *SUPERSEDING* PETITION
FOR DISCRETIONARY REVIEW

*Counsel of Record:*

SUSAN HAWK
CRIMINAL DISTRICT ATTORNEY
DALLAS COUNTY, TEXAS

PATRICIA POPPOFF NOBLE
ASSISTANT DISTRICT ATTORNEY
STATE BAR NO. 15051250
FRANK CROWLEY COURTS BUILDING
133 N. RIVERFRONT BOULEVARD, LB-19
DALLAS, TEXAS 75207-4399
(214) 653-3634(o)
Email: pnoble@dallascounty.org

*Attorneys for the State of Texas*

# IDENTITY OF JUDGE, PARTIES, AND COUNSEL

**JUDGE**
The Honorable Dominique Collins, Presiding Judge
Dallas County Criminal District Court No. 4
Frank Crowley Courts Building
133 N. Riverfront Blvd.
Dallas, Texas  75207-4399

**DEFENDANT**
Johnny Ruiz

**STATE'S TRIAL AND APPELLATE ATTORNEYS**
Justin Lord (at trial)
Patricia Poppoff Noble (on appeal)
Dallas County Criminal District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd.
Dallas, Texas  75207-4399

**DEFENSE COUNSEL AT TRIAL AND ON APPEAL**
Mary Jo Earle (at trial)
Julie Woods (on appeal)
Dallas County Public Defender's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd.
Dallas, Texas  75207-4399

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES………………………………………………………iv

STATEMENT REGARDING ORAL ARGUMENT………………………….……1

STATEMENT OF THE CASE……………………………………….……………2

STATEMENT OF PROCEDURAL HISTORY…………………………………….2

QUESTION PRESENTED FOR REVIEW…………………………………….……3

ARGUMENT………………………………………………………………………3

PRAYER FOR RELIEF……………………………………………………………14

CERTIFICATE OF SERVICE AND WORD COUNT …………………………15

# INDEX OF AUTHORITIES

**Cases**

*Clayton v. State,*
235 S.W.3d 772 (Tex. Crim. App. 2007)................................... 13

*Geesa v. State,*
820 S.W.2d 154 (Tex. Crim. App. 1991)............................ 10, 12

*King v. State,*
29 S.W.3d 556 (Tex. Crim. App. 2000)...................................... 9

*Merritt v. State,*
368 S.W.3d 516 (Tex. Crim. App. 2012)............................ 11, 12

*Rabb v. State,*
434 S.W.3d 613 (Tex. Crim. App. 2014), Alcala, J., dissenting,.... 4

*Ruiz v. State,* No. 05-13-00918-CR, 2014 Tex. App. LEXIS 12095
(Tex. App. – Dallas Nov. 5, 2014, no pet. h.) (mem. op.) (not
designated for publication) ................................................ 1, 7, 9

*Wise v. State,*
364 S.W.3d 900 (Tex. Crim. App. 2012)............................ 12, 13

**Statutes**

TEX. CODE CRIM. PROC. ANN. arts. 62.102(a), 62.055(a) (West
Supp. 2013) ........................................................................ 2

**Rules**

TEX. R. APP. P. 66.3(f)....................................................... 4

TEX. R. APP. P. 68........................................................... 1

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

The State of Texas, pursuant to TEX. R. APP. P. 68, seeks discretionary review of the opinion of the Court of Appeals for the Fifth District of Texas at Dallas in *Ruiz v. State,* No. 05-13-00918-CR, 2014 Tex. App. LEXIS 12095 (Tex. App. – Dallas Nov. 5, 2014, no pet. h.) (mem. op.) (not designated for publication) (see APPENDIX). The State's original petition omitting the Identity of Judge, Parties, and Counsel was filed yesterday, January 21, 2015. This *superseding* petition is filed to correct the omission.

In support of the superseding petition, the State would show the following:

## Statement regarding oral argument

Only one question is presented. Its resolution relies on a few facts in a brief record, and well-settled legal principles. Oral argument does not appear to be necessary, but the State will provide it, if this Court so desires upon granting discretionary review.

1

## STATEMENT OF THE CASE

After a bench trial, Appellant was convicted of the offense of failing to comply with the sex offender registration requirements of chapter 62 of the Texas Code of Criminal Procedure and sentenced to two years in prison. See TEX. CODE CRIM. PROC. ANN. arts. 62.102(a), 62.055(a) (West Supp. 2013).

## STATEMENT OF PROCEDURAL HISTORY

On January 7, 2013, Appellant was indicted for failure to comply with sex offender registration requirements. (CR: 8). On June 28, 2013, Appellant proceeded to trial on his plea of Not Guilty and waived his right to a jury trial. (CR: 23; RR:6). The court found Appellant guilty and assessed punishment at two years' confinement in the Texas Department of Criminal Justice, Institutional Division. (CR: 28-30; RR: 33).

Appellant's Motion for New Trial was overruled. (CR: 33). On March 13, 2014, Appellant filed his brief on appeal raising eleven alleged trial errors which included a challenge to the sufficiency of the evidence.

2

In an unpublished opinion, delivered November 5, 2014, the Court of Appeals for the Fifth District of Texas at Dallas reversed the trial court's judgment and acquitted Appellant after finding the evidence insufficient. On December 5, 2014, the court of appeals denied the State's Motion for Rehearing. The State's Petition for Discretionary Review was due on January 5, 2015. This Honorable Court granted the State's motion requesting an extension of time to file its petition on or before February 4, 2015.

## QUESTION PRESENTED FOR REVIEW

Did the court of appeals err in finding that the State's failure to present more objective facts to support the inferences of guilt, and to negate the existence of reasonable alternative hypotheses favoring the not guilty plea, make the evidence insufficient?

## ARGUMENT

The State will demonstrate that through the opinion in this case, the court of appeals circumvents the fact-finder's decision, calling the evidence "conclusory," and, in the process, resurrects "the long-dead reasonable-alternative-hypothesis analysis, which permits an appellate court to find the evidence insufficient based on the existence of scenarios in which the fact-finder's verdict could

3

theoretically be wrong." As Judge Alcala has so wisely advised, this Honorable Court should "keep the nail in the coffin of the reasonable-alternative-hypothesis analytical construct." *Rabb v. State,* 434 S.W.3d 613, 619 (Tex. Crim. App. 2014), Alcala, J., dissenting, citing *Geesa v. State,* 820 S.W.2d 154, 156, 159 (Tex. Crim. App. 1991) (rejecting reasonable hypothesis analytical construct for evaluating sufficiency of evidence). For all the following reasons, discretionary review of the opinion from the court of appeals is appropriate under TEX. R. APP. P. 66.3(f) because the court of appeals has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of the Court of Criminal Appeals' power of supervision.

Appellant, a convicted sex offender, was charged with violating the sex offender registration statute by failing to report an intended change of address and move date, and by not residing at his registered address. (CR: 8). During trial, it appeared that the State had abandoned the theory that the offense was committed by failing to report an intended change of address and move date because the

State's evidence was focused primarily on proving that Appellant was not residing at his registered address.

Evidence showed that on or about July 10, 2012, the date of the offense, Appellant's registered address was 525 Runstone in Irving, Texas. (RR1: 9). The major portion of the State's case was presented through Irving Police Department Officer Steven Buesing who testified that he received information that Appellant had a parole violation "for drugs." He went to Appellant's registered address on July 3, 2012 to execute a warrant for the parole violation, but Appellant was not there. (RR1: 15-16). Buesing testified that he found no evidence that Appellant was living at the registered address. Further, after Buesing spoke with Appellant's mother and sister, he concluded that Appellant had not been living at the residence for at least two weeks. (RR1: 16-17).

Buesing testified that he called and spoke to Appellant that day. Buesing confronted Appellant and told him that he knew about his parole violation and that Appellant wasn't living at the registered location. Buesing told Appellant that because he wasn't living at the location, he had failed to comply with registration

5

requirements. Appellant offered to turn himself in, and Buesing replied that if Appellant would do that, the "the fail to comply" would not be filed on Appellant. Appellant said that he would turn himself in that day. That never happened. (RR1: 18-19).

Officer Dale Gant testified that he made numerous unsuccessful attempts to locate Appellant at his registered address over a period of months. (RR1: 27). In the course of his investigation into Appellant's whereabouts, Gant spoke with Appellant's known associates. He got an anonymous tip that Appellant was staying at a house located at 3314 Clymer Street. (RR1: 27-28). Buesing was informed that another officer had learned that Appellant was staying at the Clymer Street location. On November 11, 2012, Buesing and other officers went there. The house looked like an abandoned crack house. (RR1: 22). They found Appellant hiding in the attic. (RR1: 20, 22, 24-25, 31).

On appeal, the State argued that the evidence was sufficient to show Appellant committed the offense by failing to reside at his registered address, based on (1) the investigation which yielded evidence that Appellant had not been residing there for weeks, and

6

(2) the fair inferences of guilt from Appellant's admission that he would "turn himself in" when an officer accused him of committing the offense, and Appellant's attempt to evade arrest for the offense. The court of appeals disagreed. Why?

The court found Buesing's testimony was too "conclusory." *Ruiz,* 2014 Tex. App. LEXIS 12095 at *9. Buesing had failed to offer objective facts which supported his conclusion. The court suggested there was better evidence, such as:

> But other than affirming that he learned this information "in the course of [his] investigation," Buesing did not substantiate his testimony and ultimate conclusion that Ruiz was not living at the registered address with any objective facts. For example, Buesing did not testify to any surveillance the officers did of the location. Nor did he testify that Ruiz had moved his belongings or no longer received mail at the registered address.

*Id.*

The court of appeals called for additional evidence to show where Appellant was living, if not at the registered address, stating:

> In addition, the fact that the officers found Ruiz at the Clymer Street address does not suggest that Ruiz was not residing at his registered address. [Citation omitted]. There was no testimony or other evidence that gave the impression Ruiz was living at the Clymer Street address where he was found. . . . The officers did not testify to any surveillance done of the

7

Clymer Street address to prove Ruiz was living there for a longer period of time.

*Id.* at *11.

Further, the court did not agree that Appellant's statement to Buesing that he would turn himself was an admission of guilt for the registration requirement violation; it might have been an admission of guilt for the parole violation. Moreover, it did not agree that Appellant was trying to evade arrest for the registration requirement violation; he might have been evading arrest for the parole violation. The court rejected the inferences supporting the fact-finder's verdict not because they are fair ones. But there existed different reasonable inferences which had not been disproved.

> The State contends that Ruiz's response "exhibited a consciousness of guilt" and that leads to an inference of his knowledge that Buesing's accusation was true.
>
> But during the phone call, Buesing confronted Ruiz with more than just the accusation that Ruiz was not living at his registered address. Buesing testified that after not finding Ruiz at the Runstone Road address, he called Ruiz and told him that (1) he knew Ruiz was not living at his registered address and (2) that Ruiz had a parole violation. The record shows that the purpose of Buesing's visit to the Runstone Road address (and his only involvement with Ruiz) was to arrest Ruiz for a

8

parole violation. Although the State asserts that Ruiz's response was an admission to Buesing that he violated the registration requirement, the response also could be an admission to Buesing that Ruiz knew he violated his parole. Buesing only testified that Ruiz told him "[t]hrough the conversation" that he was "gonna turn himself in." Buesing also testified that he told Ruiz that if Ruiz would turn himself in, then Buesing would "not file the fail to comply" against Ruiz.

We finally reject the State's contention that "it may be logically concluded that [Ruiz] was hiding in the attic [at the Clymer Street address] because he was attempting to flee from the police and evade arrest for the offense he admitted he committed." The evidence shows that Ruiz told Buesing he would turn himself in, Ruiz did not do so, and then he was found in an abandoned house on Clymer Street. These facts do not support a conclusion that Ruiz was hiding in the attic to avoid being prosecuted for the offense at issue in this case. *Cf. Bigby v. State,* 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) (noting that to support the admission of evidence of escape from custody or flight, "it must appear that the escape or flight have some legal relevance to the offense under prosecution").

*Id.* at *11-13.

The evidence that Appellant was not living at the registered address was entirely circumstantial. Evidence can be legally sufficient to support a conviction even if it is entirely circumstantial. *See King v. State,* 29 S.W.3d 556, 565 (Tex. Crim. App. 2000). Since the State's case was circumstantial, the court of appeals had the duty to determine whether the necessary inferences

9

favoring the guilty verdict were reasonable. Reasonableness of the inferences offered must be judged by the combined and cumulative force of all the evidence. *Geesa*, 820 S.W.2d at 156 (holding that in weighing the sufficiency of the evidence, a court should consider only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict).

The court of appeals conducted its sufficiency review by speculating on what the State could have presented through direct evidence. Then it separately considered each circumstance the State had used to allow an inference of guilt. The court did not decide that the inferences the State had relied upon were not reasonable. But, the court decided that there were alternate reasonable inferences from these circumstances favoring Appellant which had not been disproved. Thus, it found the evidence insufficient.

The court's use of this analytical method was error. *Id.* (holding the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt);

10

*Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012) (finding that the court of appeals improperly used a "divide-and-conquer" approach, separating each piece of evidence offered to support the conviction, followed by speculation on the evidence the State did not present). In *Merritt,* an arson case, the court of appeals reversed the jury's verdict after finding the evidence insufficient because it did not establish the defendant's identity as the person who set his vehicle on fire. The court of appeals had considered separately, and rejected, each piece of evidence relied on by the State for an inference of guilt.

For example, the court observed that trash bags found in Merritt's garage contained items commonly found in a vehicle's glove box. But, it decided that a reasonable inference that Merritt committed arson could not be drawn from that fact. The court also noted that matches were found at the scene. But, it believed nothing in the record linked the matches to Merritt's possession. Finally, the court recognized that Merritt was in possession of both sets of keys to the subject vehicle at the time that it was allegedly stolen. But, it discounted that fact because although there was no

11

evidence that the car was towed to the location by a wrecker, there was also no evidence that the car was not towed to the location by a wrecker. *Id.*

This Court found that the court had improperly engaged in speculation on the evidence State did not present. Giving proper deference to the jury's verdict, this Court found the evidence sufficient to sustain Merritt's conviction. *Id.* at 526.

Similarly, in <u>*Wise v. State*, 364 S.W.3d 900 (Tex. Crim. App. 2012)</u>, a computer-pornography case, the court of appeals had reversed the conviction, holding that the State had failed to prove that Wise knowingly or intentionally possessed the images. On discretionary review, the State argued that the court of appeals had erroneously applied the "reasonable hypothesis analytical construct," which this Court had rejected in *Geesa.* This Court criticized the court of appeals for crediting Wise's suggestion that viruses on his computer could have placed the images there because the jury could have reasonably disregarded that explanation. *Id. at* 904-06. The court of appeals had erroneously

focused on two alternative hypotheses to reverse the conviction based on insufficient evidence. *Id.* at 905.

Likewise, in *Clayton v. State*, 235 S.W.3d 772, 778-79 (Tex. Crim. App. 2007), Clayton testified that he discovered the murder victim in the backseat of a car covered in blood and that he left after trying, but failing, to move the car. Clayton's bloody prints were found inside the car. Considering Clayton's bloody prints first, the court of appeals stated that the bloody prints "are not evidence that [Clayton] was with the victim before the shooting. *Id.* at 777. The court concluded that the prints only proved that Clayton was at the crime scene after the victim was shot and that Clayton's presence after the murder was not enough to prove guilt. However, on discretionary review, this Court held that the court of appeals incorrectly failed to consider that there were more bloody prints than were justified by Clayton's explanation, and that supported an inference that he was lying. It also failed to consider the cumulative force of other incriminating circumstances which supported an inference that Clayton was with the victim at the time of the shooting. *Id.* at 779-82.

In the present case, Appellant's conviction was reversed because the court of appeals speculated on what other evidence could have been presented in his trial. It reasoned that there existed scenarios in which the fact-finder's verdict could theoretically be wrong. It improperly focused its attention on the failure of the evidence to disprove these existing alternate reasonable hypotheses other than guilt. Had the court of appeals given the proper deference to the verdict, it would have found the evidence sufficient.

## PRAYER FOR RELIEF

The State prays that this Honorable Court will grant the State's petition, and after conducting its review, reverse the opinion of the court of appeals and affirm the trial court's judgment. Respectfully submitted,

/s/Patricia Poppoff Noble

SUSAN HAWK
District Attorney
Dallas County, Texas

PATRICIA POPPOFF NOBLE
Assistant District Attorney
State Bar No. 15051250
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19

Dallas, Texas 75207-4399
(214) 653-3634
pnoble@dallascounty.org

## CERTIFICATE OF SERVICE AND WORD COUNT

I hereby certify that a true copy of the foregoing superseding petition was served on Assistant Public Defender Julie Woods, attorney for Appellant by TexFile.Gov and by hand delivery on January 29, 2015. I hereby certify that a true copy of the foregoing superseding petition was served on the State's Prosecuting Attorney, Lisa McMinn, by eFile.Gov and by United States mail on January 29, 2015.

I hereby further certify that the length of this petition, with authorized exclusions, is 2,219 words using Microsoft Word 2010.

/s/Patricia Poppoff Noble
PATRICIA POPPOFF NOBLE

**APPENDIX**

2014 Tex. App. LEXIS 12095, *

JOHNNY RUIZ, Appellant v. THE STATE OF TEXAS, Appellee

No. 05-13-00918-CR

COURT OF APPEALS OF TEXAS, FIFTH DISTRICT, DALLAS

2014 Tex. App. LEXIS 12095

November 5, 2014, Opinion Filed

NOTICE: PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

PRIOR HISTORY: [*1] On Appeal from the Criminal District Court No. 4, Dallas County, Texas. Trial Court Cause No. F-1235122-K.

CASE SUMMARY

OVERVIEW: HOLDINGS: [1]-The evidence was legally insufficient to support defendant's conviction under Tex. Code Crim. Proc. Ann. art. 62.102 (Supp. 2013) for failure to comply with the sex offender registration requirements; [2]-There was no evidence presented that defendant intentionally, knowingly, or recklessly failed to report an intended change of address seven days before the intended change; [3]-The fact that the police officers found defendant at another address did not suggest that defendant was not residing at his registered address; [4]-That defendant was found in the attic of an abandoned house did not support a conclusion that defendant was hiding in the attic to avoid being prosecuted for the offense at issue in this case.

OUTCOME: The judgment of the trial court was reversed, and defendant was acquitted.

CORE TERMS: registered, registration requirements, sex offender, phone call, fact finder, residing, reside, arrest, attic, insufficient to support, required to register, registration, locate, hiding, parole violation, law enforcement authority, failing to comply, failure to comply, fail to comply, abandoned, annual, intends, execute, evidence presented, reasonable inferences, intentionally, surveillance, electricity, anticipated, recklessly

LexisNexis® Headnotes                                                                    ⊟Hide


Criminal Law & Procedure > Appeals > Standards of Review > Deferential Review > General Overview 🔖

Criminal Law & Procedure > Appeals > Standards of Review > Substantial Evidence > Sufficiency of Evidence 🔖

Evidence > Procedural Considerations > Burdens of Proof > Proof Beyond Reasonable Doubt 🔖

Evidence > Inferences & Presumptions > Inferences 🔖

Evidence > Procedural Considerations > Weight & Sufficiency 🔖


HN1 An appellate court reviews a sufficiency challenge by considering all the evidence in the light most favorable to the verdict; based on that evidence and any reasonable inferences, it must determine whether a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. Under this standard, the fact finder has full responsibility for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. The appellate court presumes the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that determination. More Like This Headnote


Criminal Law & Procedure > Postconviction Proceedings > Sex Offenders > Registration 🔖

HN2 A person commits the offense of failing to comply with sex offender registration requirements if he is required to register and fails to comply with any requirement of Chapter 62 of the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 62.102(a) (Supp. 2013). One requirement is that a person with a reportable conviction must register with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days. Tex. Code Crim. Proc. Ann. art. 62.051(a). Another requirement is that if a person who is required to register intends to change his address, he must report in person to the local law enforcement authority and provide at least seven days' notice of the intended move. Tex. Code Crim. Proc. Ann. art. 62.055(a). More Like This Headnote

Criminal Law & Procedure > Postconviction Proceedings > Sex Offenders > Registration

HN3 A registered sex offender is not required to spend every spare moment and every night at his or her registered address. More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Fleeing & Eluding > General Overview

Evidence > Relevance > General Overview

HN4 To support the admission of evidence of escape from custody or flight, it must appear that the escape or flight have some legal relevance to the offense under prosecution. More Like This Headnote

COUNSEL: For Appellants: Julie Woods, Katherine Drew, Lynn Richardson, Dallas, TX.
For Appellees: Patricia Poppoff Noble, Michael Casillas, Craig Watkins, Dallas, TX.

JUDGES: Before Justices O'Neill, Lang-Miers, and Brown. Opinion by Justice Brown.

OPINION BY: ADA BROWN
OPINION


MEMORANDUM OPINION

Opinion by Justice Brown

After a bench trial, the trial court convicted Johnny Ruiz of the offense of failing to comply with the sex offender registration requirements of chapter 62 of the Texas Code of Criminal Procedure1 and sentenced him to two years in prison. In his first four issues, Ruiz challenges the sufficiency of the evidence to support his conviction and contends the trial court erred when it overruled his objections to hearsay testimony, violated his constitutional right to confrontation when it allowed the State's witness to testify as to what other people told him, and failed to invoke the Rule after defense counsel's request. In seven additional issues, Ruiz complains of inaccuracies in the trial court's judgment. We agree that the evidence is legally insufficient to support Ruiz's conviction. Accordingly, we reverse his conviction and render a judgment of acquittal.

FOOTNOTES

1 See Tex. Code Crim. Proc. Ann. art. 62.102(a) (West Supp. 2013); id. art. 62.055(a) (ChangeofAddress).


I.

Ruiz was convicted of an [*2]  offense that required him to register as a sex offender. See

[Tex. Code Crim. Proc. Ann. art. 62.001(5)(A)](); see also [Tex. Penal Code Ann. § 22.021(a)]() (West Supp. 2014). On January 26, 2011, Ruiz registered the following address with the City of Irving Police Department: 525 Runstone Road, Irving, Texas. He completed his annual registration at that same address on February 6, 2012. See [Tex. Code Crim. Proc. Ann. art. 62.058(a)]().

In July 2012, Irving police officers Steven Buesing and Dale Gant went to Ruiz's registered address to execute a warrant for a parole violation. Buesing testified that when they arrived at the residence, "lots" of Ruiz's family were there, including Ruiz's mother, sister, nieces, and nephews, but that Ruiz was not there. Buesing then testified to his investigation at Ruiz's residence, answering just four questions about his investigation and offering two conclusions that Ruiz was not living at 525 Runstone Road:

> Q. During the course of your investigation while you were at the location on 525 Runstone, did you have any evidence that the defendant Johnny Ruiz was living there?
>
> A.No.
>
> Q. Did you develop evidence, in fact, that he was not living there?
>
> A.Yes.
>
> Q. And that he hadn't been living there for quite some time?
>
> A.Yes. [*3]
>
> .                     .                     .
>
> Q. Let me move on. In the course of your investigation, you were able to determine that this Defendant was not living there?
>
> A. Yes.

Buesing also said he spoke with Ruiz over the telephone on July 3, 2012. Buesing testified to that phone call as follows:

> I explained to [Ruiz] that I knew that he wasn't living at the location and that [Ruiz] had a parole violation, and I also told [Ruiz] that because he wasn't living at the location that he was in violation for his failure to comply for the registration. Through the conversation, [Ruiz] told me that he was gonna turn himself in.

Buesing added that despite telling Ruiz that Buesing would not "file the fail to comply" charge if Ruiz turned himself in, Ruiz did not do so. Buesing reported a registration violation to detective Scott Teien with the department's sex offender registration unit. Teien verified that the Runstone Road address was Ruiz's registered address and that Ruiz was in compliance with his annual registration requirement. Teien testified that in July 2012, Ruiz had not changed his registered address or informed Teien that he was moving.

Gant continued to visit Ruiz's registered address "over the course of a couple [of] months." [*4] Gant testified that he "made numerous attempts" to locate Ruiz at the Runstone Road address but that Ruiz was not at the location each time Gant went there. Buesing testified that Gant learned through the investigation that Ruiz "was supposed to be staying at a house" located at 3314 Clymer Street in Dallas. On November 11, 2012, Buesing went with Gant and another officer to the Clymer Street address. Buesing said the house at that address looked like an abandoned "crack house" with boarded-up windows. The house was in very poor repair and did not appear to have electricity. After

knocking on the front door for fifteen to twenty minutes, a woman answered the door. The officers then conducted a search of the house and found Ruiz hiding in the attic. Buesing testified that Ruiz told the officers he hurt his back and "had been in the attic for two days because no one knew he was up there." Buesing also said that there was no record of Ruiz registering as a sex offender for the Clymer Street address.

The State argued that this evidence showed that Ruiz was not living at the Runstone Road address and he was not registered or supposed to be living at the Clymer Street address where he was [*5] found. After hearing this evidence, the trial court found Ruiz guilty of the offense and sentenced him to two years in prison.

II.

Ruiz contends in his first issue that the evidence is insufficient to support his conviction for failure to comply with the sex offender registration requirements. HN1⬆We review Ruiz's sufficiency challenge by considering all the evidence in the light most favorable to the verdict; based on that evidence and any reasonable inferences, we must determine whether a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); Thornton v. State, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014). Under this standard, the fact finder has full responsibility for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319. We presume the fact finder resolved any conflicts in the evidence in favor of the verdict and defer to that determination. See id. at 326. We do not reassess witness credibility. Thornton, 425 S.W.3d at 303.

HN2A person commits the offense of failing to comply with sex offender registration requirements if he "is required to register and fails to comply" with any requirement of Chapter 62 of the Code of Criminal Procedure. Tex. Code Crim. Proc. [*6] Ann. art. 62.102(a); Young v. State, 341 S.W.3d 417, 425 (Tex. Crim. App. 2011) ("Article 62.102 is a generalized 'umbrella' statute that criminalizes the failure to comply with any of the registration requirements set out in Chapter 62."). One requirement is that a person with a "reportable conviction" must register with "the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days." Tex. Code Crim. Proc. Ann. art. 62.051(a). Another requirement is that if a person who is required to register intends to change his address, he must report in person to the local law enforcement authority and provide at least seven days' notice of the intended move. Id. art. 62.055(a). Ruiz does not dispute that he was required to register as a sex offender and that his status as a registered sex offender mandated compliance with the registration requirements governing a change of address.

The State charged Ruiz with violating his registration requirements in two ways. Specifically, the State alleged in the indictment that Ruiz committed the offense by intentionally, knowingly, and recklessly (1) failing to report in person an intended change of address and move date to his local law enforcement authority at least seven days before Ruiz changed his address [*7] and (2) not residing at his registered address. Regarding the State's first allegation, Ruiz contends that the evidence is legally insufficient to support his conviction because the State provided no evidence that he intended to move from his registered address. He claims that Buesing's testimony that

Ruiz was not at the Runstone Road address on the July 2012 date does not prove that Ruiz intended to move from that location. He also contends that Buesing's assessment that Ruiz no longer lived at the registered address was not supported by any facts and Buesing's conclusory statement that he did not believe Ruiz resided there was not enough to establish Ruiz intended to change his address. We agree with Ruiz's contentions.

The first registration requirement the State charged Ruiz with violating is triggered only "[i]f a person required to register under this chapter intends to change address . . . ." Id.; see also Green v. State, 350 S.W.3d 617, 623 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). None of the evidence presented at trial, however, established that Ruiz intended to change his registered address or anticipated a move from that address. See Green, 350 S.W.3d at 623. Teien testified that Ruiz had twice registered the Runstone Road address as his residence and that Ruiz was in compliance [*8] with his annual registration requirement. Teien confirmed that Ruiz was required to give Teien seven days' notice before moving if Ruiz was no longer going to be living at the registered address and testified that Ruiz had not reported an anticipated move or otherwise notified Teien he was changing his address in July 2012. Buesing testified that he determined in the course of his investigation that Ruiz was not living at the Runstone Road address. But Buesing's testimony did not supply any information about whether Ruiz had an intention to move from the Runstone Road address. Gant's testimony revealed only that Ruiz was not there when Gant tried to locate Ruiz at the Runstone Road address and that Ruiz was later found at the Clymer Street address.

In its appellate brief, the State focuses its argument on the second allegation—that Ruiz failed to reside at his registered address. The State claims that based on Buesing's investigation which yielded "positive evidence" that Ruiz had not been living at the address, Ruiz's admission that he would "turn himself in" on the phone call with Buesing, and Ruiz's "attempt to evade arrest for the offense" by hiding in the attic of the house on [*9] Clymer Street, it is "clear" Ruiz failed to reside at his registered address. We disagree with the State.

Buesing offered only conclusory testimony that Ruiz was not residing at the Runstone Road address. Buesing's testimony showed that he went to the Runstone Road address with Gant to execute an arrest warrant for a parole violation. Buesing testified that he found no evidence that Ruiz was living at the location and that he had "develop[ed] evidence" that Ruiz had not been living at the address for some time. But other than affirming that he learned this information "in the course of [his] investigation," Buesing did not substantiate his testimony and ultimate conclusion that Ruiz was not living at the registered address with any objective facts. For example, Buesing did not testify to any surveillance the officers did of the location. Nor did he testify that Ruiz had moved his belongings or no longer received mail at the registered address. When asked about his "further efforts" to locate Ruiz, Buesing spoke only of the phone call, which Buesing said happened the same day he tried to execute the arrest warrant at Ruiz's registered address in July 2012.

Likewise, Gant's testimony provided nothing [*10] that would lead a reasonable fact finder to conclude that Ruiz was not residing at his registered address. Gant testified that

he went to the Runstone Road address on multiple occasions to locate Ruiz and that Ruiz was not there on any of those occasions. But the fact that Ruiz was not present at the location when the officers visited the address does not suggest that Ruiz was not still living and residing at the registered address. See Silber v. State, 371 S.W.3d 605, 613 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (HN3 "A registered sex offender is not required to spend every spare moment and every night at their registered address."). In addition, the fact that the officers found Ruiz at the Clymer Street address does not suggest that Ruiz was not residing at his registered address. See id. at 612 (noting that bodily presence at a place alone is insufficient to create a residence). There was no testimony or other evidence that gave the impression Ruiz was living at the Clymer Street address where he was found. To the contrary, Buesing testified that the house looked abandoned and that it did not appear to have electricity. Neither officer testified that Ruiz's clothes or other belongings were at that house, and the State offered no evidence of a possessory interest Ruiz [*11] had in the Clymer Street house. Further, the only evidence of how long Ruiz had been at the Clymer Street address was Buesing's testimony that Ruiz said he had been there for two days. The officers did not testify to any surveillance done of the Clymer Street address to prove Ruiz was living there for a longer period of time.

The State emphasizes the testimony about the phone call Buesing had with Ruiz on July 3, 2012. The State argues that when Buesing accused Ruiz of not living at his registered address during the phone call, Ruiz said he would turn himself in. The State maintains that when guilt must be inferred from circumstances in evidence, "additional evidence of

the defendant's admission is sufficient to support a conviction." The State contends that Ruiz's response "exhibited a consciousness of guilt" and that it leads to an inference of his knowledge that Buesing's accusation was true.

But during the phone call, Buesing confronted Ruiz with more than just the accusation that Ruiz was not living at his registered address. Buesing testified that after not finding Ruiz at the Runstone Road address, he called Ruiz and told him that (1) he knew Ruiz was not living at his registered [*12] address and (2) that Ruiz had a parole violation. The record shows that the purpose of Buesing's visit to the Runstone Road address (and his only involvement with Ruiz) was to arrest Ruiz for a parole violation. Although the State asserts that Ruiz's response was an admission to Buesing that he violated the registration requirement, the response also could be an admission to Buesing that Ruiz knew he violated his parole. Buesing only testified that Ruiz told him "[t]hrough the conversation" that he was "gonna turn himself in." Buesing also testified that he told Ruiz that if Ruiz would turn himself in, then Buesing would "not file the fail to comply" against Ruiz.

We finally reject the State's contention that "it may be logically concluded that [Ruiz] was hiding in the attic [at the Clymer Street address] because he was attempting to flee from the police and evade arrest for the offense he admitted he committed." The evidence shows that Ruiz told Buesing he would turn himself in, Ruiz did not do so, and then he was found in an abandoned house on Clymer Street. These facts do not support a conclusion that Ruiz was hiding in the attic to avoid being prosecuted for the offense at issue in this [*13] case. Cf. Bigby v. State, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994)

(noting that HN4to support the admission of evidence of escape from custody or flight, "it must appear that the escape or flight have some legal relevance to the offense under prosecution").

III.

After reviewing the record in this case, we conclude that there was no evidence presented that Ruiz intentionally, knowingly, or recklessly failed to report an intended change of address seven days before the intended change. We also conclude that even when we review the evidence in the light most favorable to the verdict, a rational fact finder could not have found beyond a reasonable doubt that Ruiz failed to reside at his registered address. See Jackson, 443 U.S. at 319. We resolve Ruiz's first issue in his favor. Based on our resolution of Ruiz's first issue, we do not address Ruiz's ten remaining issues. Tex. R. App. P. 47.1.

Because the evidence is legally insufficient to support the judgment, we reverse Ruiz's conviction for failing to comply with his sex offender registration requirements and render judgment acquitting Ruiz of that charge.

/Ada  Brown/

ADA BROWN JUSTICE

Do Not Publish

Tex. R. App. P. 47

JUDGMENT

Based on the Court's opinion of this date, the judgment of the trial court is REVERSED and the appellant [*14]  is hereby ACQUITTED.

Judgment entered this 5th day of November, 2014.