

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00460-CR

———————————————————

JOHNNIE DEMPSEY WOOD, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 97th District Court
Montague County, Texas
Trial Court No. 2018-0170M-CR

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Opinion by Chief Justice Sudderth

## OPINION

The Texas Penal Code prohibits a felon from possessing a firearm at his home within a certain period of time after his felony conviction. Tex. Penal Code Ann. § 46.04(a)(1). Appellant Johnnie Dempsey Wood was a felon subject to this prohibition. By statute, the timeframe for the prohibition began at Wood's conviction and continued for a minimum of five years, but it could extend longer, with a maximum end date falling on the fifth anniversary of four alternative, statutorily listed events. The State alleged one alternative event—the fifth anniversary of Wood's release from confinement—but the evidence at trial proved a different alternative event—the fifth anniversary of Wood's release from parole supervision. Therein lies the central issue of this case: When an unlawful-possession indictment alleges one (and only one) alternative statutory timeframe element but the evidence at trial proves another, is the variance material? Wood implicitly argues that it is and that the evidence is thus insufficient to support his conviction for the offense alleged in the indictment. We agree and will reverse.[1]

## I. Background

Wood was convicted of felony aggravated assault on December 7, 2006, and he was sentenced to 30 years' confinement. But Wood did not serve his full sentence.

---

[1]Because Wood's first issue is dispositive, we need not address his second issue. *See* Tex. R. App. P. 47.1.

At some point, he was released from confinement and granted parole.[2]  And he was still on parole on March 4, 2018, when law enforcement officers found five firearms at his home.[3]

Wood was subsequently indicted for five counts of unlawful possession of a firearm by a felon.  The five counts differed only in the specific firearm that each alleged Wood possessed; all five counts of the indictment charged Wood with intentionally or knowingly possessing a firearm on March 4, 2018, after "having been convicted of the felony offense of aggravated assault on the 7th day of December 2006 . . . [and] before the fifth anniversary of [his] release from confinement following conviction of said felony."  The indictment said nothing about parole.

At Wood's jury trial, the State did not attempt to prove that Wood possessed the weapons within five years of his "release from confinement following

---

[2]The State did not offer evidence to prove when Wood was released from confinement, but Chief Deputy Jack Lawson of the Montague County Sheriff's Office stated that, based on Wood's original 30-year sentence, Wood's parole would continue until 2036.

[3]Kent Holcomb, the City of Nocona's Chief of Police, testified that he went to Wood's residence to arrest him on a felony warrant, and after the arrest, Chief Holcomb "cleared the house" and found a gun cabinet in the bedroom that Wood shared with his ex-wife.  Holcomb contacted her, and she retrieved the gun-cabinet keys from the bedroom dresser and opened the cabinet to reveal two rifles, two shotguns, and a pistol.

Wood's ex-wife testified that Wood moved in with her in October 2017.  The firearms were already in her home when Wood moved in.  When Wood's ex-wife offered to move them, Wood told her that the weapons could stay as long as they remained locked up.  She testified that Wood knew where the gun-cabinet keys were but that she never saw him handle the keys or the firearms.

conviction."[4] Instead, the State offered evidence that Wood possessed the weapons while on parole for his 2006 felony conviction.

Nevertheless, when the jury was asked to determine whether Wood unlawfully possessed the five firearms "before the fifth anniversary of the defendant's release from confinement," the jury found Wood guilty of all five counts "as charged in the indictment." After hearing punishment evidence, the trial court assessed Wood's punishment at twenty-five years' confinement for each offense, with the sentences running concurrently.

Wood appeals, challenging the sufficiency of the evidence to support the release-from-confinement elements alleged in each of the five counts of his indictment.

## II. Standard of Review

"It is axiomatic that a conviction upon a charge not made . . . constitutes a denial of due process." *Jackson v. Virginia*, 443 U.S. 307, 314, 99 S. Ct. 2781, 2786 (1979); *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001) (quoting *Jackson*). To prevent such an "arbitrary deprivation of liberty," due process requires that the State provide sufficient proof of every element of the offense charged in the indictment. *Jackson*, 443 U.S. at 314, 99 S. Ct. at 2786; *Gollihar*, 46 S.W.3d at 246 & n.3; *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014).

---

[4]Wood moved for a directed verdict and a new trial on this basis, but the trial court denied both motions.

In an evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Herron v. State*, 625 S.W.3d 144, 152 (Tex. Crim. App. 2021); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The essential elements of the offense are defined by the hypothetically correct jury charge. *Herron*, 625 S.W.3d at 152; *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). "The hypothetically[ ]correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Herron*, 625 S.W.3d at 152; *Ramjattansingh v. State,* 548 S.W.3d 540, 546 (Tex. Crim. App. 2018).

Because the hypothetically correct charge is limited to that "authorized by the indictment," the statutory elements contained in this hypothetical charge are modified by the factual details and legal theories in the defendant's charging instrument. *Herron*, 625 S.W.3d at 152. So when a statute lists more than one method of committing an offense or more than one definition of an element of an offense, and the indictment alleges some, but not all, of the statutorily listed methods or definitions, the State is limited to the methods and definitions alleged in the indictment. *Id.*; *Rabb*, 434 S.W.3d at 616 ("When the State pleads a specific element of a penal offense that has

statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

But the hypothetically correct jury charge does not necessarily have to track all of the indictment's allegations. *Herron*, 625 S.W.3d at 152. Whether an allegation must be included in the hypothetically correct jury charge depends on the materiality of the allegation, i.e., whether a variance between the allegation in the indictment and the evidence offered at trial would be material. *Id.*; *see Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011) ("[W]hen an indictment needlessly pleads an allegation that gives rise to an immaterial variance, that allegation will not be included in the hypothetically correct jury charge."). But which indictment allegations (and corresponding variances) are material? As relevant here, variances involving statutorily enumerated elements are always material, and the corresponding indictment allegations always bind the State.[5] *Johnson v. State*, 364 S.W.3d 292, 298–99 (Tex. Crim. App. 2012); *see also Cada v. State*, 334 S.W.3d 766, 774 (Tex. Crim. App. 2011) (noting

---

[5]Generally, a variance is material if it prejudices the defendant's substantial rights, i.e., the indictment, as written, fails to adequately inform the defendant of the charge against him or subjects the defendant to the risk of being prosecuted later for the same crime. *Ramjattansingh*, 548 S.W.3d at 547. There are three categories of variances: (1) variances "involving statutory language that defines the offense . . . [, which] are always material"; (2) variances "involving a non-statutory allegation that describes an 'allowable unit of prosecution' element of the offense . . . [, which] are sometimes material"; and (3) "variances involving immaterial non-statutory allegations." *Johnson v. State*, 364 S.W.3d 292, 298–99 (Tex. Crim. App. 2012).

that "[t]he Texas 'immaterial variance' law as set out in *Gollihar* does not apply to the specific statutory elements alleged in the indictment").

## III. Discussion

Texas Penal Code Section 46.04(a) prohibits a felon from possessing a firearm for a minimum of five years after the conviction,[6] but the maximum timeframe for the prohibition and the locations to which it extends depend on several factors. Tex. Penal Code Ann. § 46.04(a). The statute provides:

> A person who has been convicted of a felony commits an offense if he possesses a firearm:
>
> > (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or

---

[6]Because Wood possessed a firearm more than five years after his felony conviction, the cases addressing unlawful-possession offenses within the minimum five-year period are distinguishable. *Cf., e.g.*, *Cunningham v. State*, No. 06-15-00129-CR, 2016 WL 5377916, at *4 (Tex. App.—Texarkana Sept. 27, 2016, no pet.) (mem. op., not designated for publication) (holding that when the possession occurs within five years of conviction, "the date of release from confinement [or other alleged statutory timeframe element] is unnecessary because 'the period of prohibition extends for this duration in any event'"); *Fagan v. State*, 362 S.W.3d 796, 800–01 (Tex. App.—Texarkana 2012, pet. ref'd) (noting that Section 46.04 prohibits possession for a minimum five-year timeframe but that proof of the statutory timeframe element is necessary when the offense occurs outside this minimum timeframe); *Tapps v. State*, 257 S.W.3d 438, 445 (Tex. App.—Austin 2008) ("The date of release from confinement is not necessary when the alleged possession occurs within five years of the date of conviction because the period of prohibition extends for this duration in any event."), *aff'd on other grounds*, 294 S.W.3d 175 (Tex. Crim. App. 2009).

7

> (2) after the period described by Subdivision (1), at any location other than the premises at which the person lives.[7]

*Id.*

The central issue in this case is the materiality of a variance between the alternative statutory timeframe elements listed in comma-separated fashion within Subsection (a)(1). Specifically, Wood was indicted under Subsection (a)(1)'s release-from-confinement option, but the State offered evidence of Subsection (a)(1)'s release-from-parole-supervision option instead. Wood implicitly alleges that the variance between these two alternative timeframe elements is material and argues that the evidence is insufficient to support his convictions because the State did not prove the statutory timeframe element it alleged in each of the five counts of the indictment. The State disagrees. It claims that the discrepancy was not material because "the variance did not involve an allegation drawn from a delineated option within the statute and would not affect the hypothetically[ ]correct jury charge." According to the State, the legislature's structured delineation of subsections is equivalent to materiality; therefore, the indictment bound the State to Subsection (a)(1) rather than Subsection (a)(2),[8] but the indictment did not bind the State to a particular timeframe option within Subsection (a)(1).

---

[7]Wood possessed a firearm at his residence, rendering Subsection (a)(2) inapplicable. *See* Tex. Penal Code Ann. § 46.04(a)(2).

[8]*Cf. Saldana v. State*, 418 S.W.3d 722, 725–26 (Tex. App.—Amarillo 2013, no pet.) (acquitting defendant and holding that the conviction could not be sustained

8

This is an issue of first impression for this court.[9]  But it is not an issue on which we lack guiding, analogous precedent.

In *Cada*, the Court of Criminal Appeals discussed material variances in the context of another statute: the retaliation statute.  334 S.W.3d at 770–76.  There, as here, the relevant Penal Code provision set forth numerous alternative ways of proving the offense—some delineated in structured subsections and some grouped in comma-separated lists within subsections:

> A person commits an offense if the person intentionally or knowingly harms or threatens to harm another by an unlawful act:

based on Subsection (a)(2) of the unlawful-possession statute where the indictment relied upon Subsection (a)(1) only); *Hall v. State*, Nos. 05–10–00084–CR, 05–10–00085–CR, 05–10–00086–CR, 05–10–00087–CR, 2012 WL 3174130, at *2–5 (Tex. App.—Dallas Aug. 7, 2012, pet. ref'd) (not designated for publication) (same); *Fagan*, 362 S.W.3d at 799–801 (same).

[9]Our sister court has addressed this same issue in an unpublished opinion. *Trevino v. State*, No. 13-14-00280-CR, 2015 WL 2160042, at *3–6 (Tex. App.—Corpus Christi–Edinburg May 7, 2015, no pet.) (mem. op., not designated for publication).  In that case, the State charged Trevino with possessing a firearm before the fifth anniversary of his release from parole supervision, but the State offered evidence that Trevino possessed the firearm before the fifth anniversary of his release from confinement.  *Id.* at *1–2.  Relying on *Cada*, the *Trevino* court held that the release-from-parole-supervision allegation was included in the hypothetically correct jury charge, that the variance between the indictment and the evidence was material, and that the evidence was thus insufficient to support Trevino's conviction.  *Id.* at *4–6.

Nonetheless, we recognize that this opinion is, at most, persuasive authority. *See* Tex. R. App. P. 47.7(a) ("Opinions and memorandum opinions not designated for publication by the court of appeals under these or prior rules have no precedential value[.]").

> (1) in retaliation for or on account of the service or status of another as a:
>
> > (A) public servant, *witness*, prospective witness, or *informant*; or
> >
> > (B) person who has reported or who the actor knows intends to report the occurrence of a crime; or
>
> (2) to prevent or delay the service of another as a:
>
> > (A) public servant, witness, prospective witness, or informant; or
> >
> > (B) person who has reported or who the actor knows intends to report the occurrence of a crime.

Tex. Penal Code Ann. § 36.06(a) (emphasis added). The State charged Cada with retaliation "on account of the [complainant's] service . . . as a witness," but the evidence at trial showed that Cada retaliated "on account of the [complainant's] service . . . as a[n] . . . informant." *Id.*; *Cada*, 334 S.W.3d at 774–75. The indictment and evidence thus both fit within the same structured subsection—Subsection (1)(A)—but the indictment alleged a statutory option within the comma-separated list contained in that subsection different from what the evidence supported. *Cada*, 334 S.W.3d at 774–75; *see* Tex. Penal Code Ann. § 36.06(a)(1)(A). The Court of Criminal Appeals described the statute as a "'Chinese Menu' style of setting out the elements" listing out the relevant "elements and alternative elements," under Subsection (1)(A) as:

> (1)   The Defendant

(2)    a.  intentionally [or]

         b.  knowingly

(3)    a.  harms [or]

         b.  threatens to harm

(4)    another person

(5)    by an unlawful act

(6)    a.  in retaliation for [or]

         b.  on account of

(7)    a.  the service of another [or]

         b.  the status of another

(8)    as a

         a.  public servant

         b.  witness

         c.  prospective witness [or]

         d.  informant.

*Cada*, 334 S.W.3d at 770–71 (indentation altered). The court explained that "[t]he indictment and jury charge must contain at least one item from each numbered element, but it may contain more than one [lettered] alternative element (e.g., the indictment might list 'a public servant, witness, prospective witness, or informant')." *Id.* But in terms of materiality, if the indictment lists only one lettered item "from a penal offense that contains alternatives for that element, the sufficiency of the

11

evidence is measured by the element that was actually pleaded, not any other statutory alternative element." *Id.* at 774.

In Cada's case, then, although the State could have charged him with multiple alternative elements—e.g., both "witness" and "informant"—Cada's indictment only alleged retaliation on account of the complainant's service as a "witness," so the State was required to "prove the statutory elements that it ha[d] chosen to allege, not some other alternative statutory elements that it did not allege." *Id.* at 776. In other words, the variance between the indictment—which alleged "witness"—and the evidence—which showed the alternative "informant" element—was material; the evidence was legally insufficient to prove the offense alleged. *Id.*

Like the retaliation statute construed in *Cada*, the unlawful-possession statute at issue here reflects a "'Chinese Menu' style of setting out the elements." *Id.* at 770; *see also Trevino*, 2015 WL 2160042, at *4–6 (discussing and applying *Cada* to determine materiality of statutory timeframe element in Subsection (a)(1) of unlawful-possession statute). And, as *Cada* demonstrated, the materiality of elements within this menu is not dependent upon the legislature's decision to use structured subsections in the statute rather than comma-separated lists. 334 S.W.3d at 770–71; *see Trevino*, 2015 WL 2160042, at *5 n.5 ("The mere fact that the statute does not enumerate each option separately in its own subsection does not mean that the State may allege one option but prove another."). Rather, to prove that Wood unlawfully possessed a firearm under Subsection (a)(1), the State was required to prove:

(1)    the defendant

(2)    having been convicted of a felony

(3)    a.  intentionally or

       b.  knowingly

(4)    possessed a firearm

(5)    after the felony conviction and

(6)    before the fifth anniversary of the later of

       a.  his release from confinement following the felony conviction,

       b.  his release from supervision under community supervision,

       c.  his release from supervision under parole, or

       d.  his release from supervision under mandatory supervision.

Tex. Penal Code Ann. § 46.04(a)(1).  As in *Cada*, "[t]he indictment and jury charge must contain at least one item from each numbered element, but [they] may contain more than one alternative element."  334 S.W.3d at 770–71.  The State was free to list multiple alternative timeframe elements in Wood's indictment; it could have alleged that he possessed a weapon before the fifth anniversary of his release from confinement and of his release from parole supervision.  *See id.* at 771 ("It is well established that the State may plead in the conjunctive and charge in the disjunctive.").  For that matter, the State was free to throw everything at the wall and charge Wood with possessing a weapon after his conviction and before the fifth anniversary of his release from confinement and his release from supervision under community

13

supervision, parole, and mandatory supervision. Tex. Penal Code Ann. § 46.04; *see also* *Trevino*, 2015 WL 2160042, at *5 (noting, where indictment included only release-from-parole-supervision option, that the indictment could have alleged both release-from-confinement and release-from-parole-supervision options). But the State did not do so. Instead, it alleged only one alternative timeframe element: "release from confinement following [Wood's] conviction." This was the only statutory timeframe element "authorized by the indictment" and included in the hypothetically correct jury charge—the charge by which the sufficiency of the evidence is measured. *See Herron*, 625 S.W.3d at 152. "That is what federal due process and *Jackson v. Virginia* require[:] proof beyond a reasonable doubt to support every element of the offense alleged." *Cada*, 334 S.W.3d at 774.

The State offered no evidence that Wood possessed any or all of the five relevant weapons before the fifth anniversary of his "release from confinement following [his] conviction." Instead, the State offered evidence of a statutory timeframe element not alleged in Wood's indictment: release from parole supervision. Because the variance between the release-from-confinement indictment allegation and the release-from-parole-supervision evidence offered at trial was material, the evidence is legally insufficient to support Wood's conviction for the offense alleged in his indictment. *See Trevino*, 2015 WL 2160042, at *4 ("Because the 'nature of release' [i.e., statutory timeframe] is one of the elements of the offense listed in the statute, the

14

State was required to prove that element as alleged, and the variance is *per se* material.").

We sustain Wood's first issue.

## IV. Conclusion

The State was required to "prove the [alternative] statutory elements that it . . . chos[e] to allege, not some other alternative statutory elements that it did not allege." *Cada*, 334 S.W.3d at 776; *see also Rabb*, 434 S.W.3d at 617 (quoting and applying *Cada*). Because the State did not prove what it alleged, we reverse Wood's five convictions and render corresponding judgments of acquittal. *See Thomas v. State*, 444 S.W.3d 4, 9 (Tex. Crim. App. 2014) ("[A] material variance renders a conviction infirm, and the only remedy is to render an acquittal.").

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Publish

Delivered: November 10, 2021

15